UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR NICHOLAS,

    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. 2:13-cv-2551 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born January 22, 1962, applied on January 31, 2011 for DIB and SSI, alleging disability beginning January 28, 2010. Administrative Transcript ("AT") 84-85, 144, 148. Plaintiff alleged he was unable to work due to hepatitis B and liver failure. AT 199. In a decision

/////

/////

1

dated August 29, 2012, the ALJ determined that plaintiff was not disabled.[1]  AT 27.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since January 28, 2010, the alleged onset date.
>
> 3. The claimant has the following severe impairments:  hepatitis B and cirrhosis of the liver.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl; he should never work at unprotected heights; he should never work with moving machinery; he should not work around fire and chemicals; he requires a sit/stand option which is defined as sitting for fifteen to thirty minutes at a time and standing for thirty minutes at a time.

    6. The claimant is unable to perform any past relevant work.

    7. The claimant was born on January 22, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

    8. The claimant has a limited education and is able to communicate in English.

    9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2010, through the date of this decision.

AT 20-27.

ISSUES PRESENTED

Plaintiff contends that the ALJ improperly evaluated the medical evidence, improperly discredited him and a third-party report, and posed an incomplete hypothetical question to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "'such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion.'" Orn v. Astrue, 495 F.3d
2  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The
3  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and
4  resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations
5  omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more
6  than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

1. Medical Opinions

Plaintiff contends the ALJ improperly weighed the opinions of Dr. Michael Stacey, Dr. Jenna Brimmer and Dr. M. Friedman. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

4

F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Stacey reported that he treated plaintiff from August 9, 2010 to March 21, 2011. AT 570. In March 2011, Dr. Stacey completed a Claim for Disability Insurance Benefits – Doctor's Certificate form on plaintiff's behalf stating that he had diagnosed plaintiff with decompensated liver disease and hepatitis B and opining that plaintiff has been unable to perform his work since December 27, 2010. AT 570.

Dr. Brimmer completed a comprehensive internal medicine evaluation on April 26, 2011. AT 408. Dr. Brimmer opined that plaintiff could stand and walk up to six hours, sit without limitation and did not need an assistive device. AT 412. She further opined that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds while he could occasionally climb, balance, stoop, kneel, crouch and crawl. AT 412.

Dr. Friedman completed a Physical Residual Functional Capacity Assessment on May 16, 2011. See AT 414-18. In that assessment, Dr. Friedman opined that plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. AT 415-16. Dr. Friedman also noted that there were no treating source conclusions significantly different from his conclusions. AT 418.

/////

The ALJ gave little weight to Dr. Stacey's opinion regarding plaintiff's ability to perform his regular or customary work because it was vague, imprecise, and did not include findings of specific limitations in claimant's activities.[2] AT 24. The ALJ also explained that it was unclear what evidence Dr. Stacey relied upon in forming his opinion. AT 24. Aside from stating plaintiff had been unable to perform his regular or customary work, Dr. Stacey's progress notes revealed no opinion on plaintiff's physical limitations arising from his liver disease and hepatitis B. See AT 332-36, 338-42, 445-57. Indeed, on March 21, 2011 and April 11, 2011, Dr. Stacey noted that plaintiff's liver cirrhosis was stable and that plaintiff was doing well considering his liver condition. AT 332, 445. The ALJ did not err in weighing Dr. Stacey's opinion.

Plaintiff further contends that the ALJ improperly relied upon Dr. Brimmer's opinion because Dr. Brimmer had not reviewed certain medical records, including a partial disability report form, laboratory values from 2010 indicating some abnormalities, and an emergency report from December 2010. The ALJ gave great weight to the opinion of Dr. Brimmer reasoning that Dr. Brimmer's opinion was consistent with evidence in the record and was based on Dr. Brimmer's examination of plaintiff as well as evidence in the record. AT 24. Plaintiff does not explain how the additional evidence would have or should have changed Dr. Brimmer's opinion. Accordingly, plaintiff's asserted error lacks merit.

Plaintiff also contends that the ALJ improperly gave partial weight to the opinion of Dr. Friedman because Dr. Friedman did not have records added to plaintiff's file after May 26, 2011 and Dr. Friedman did not examine plaintiff. Plaintiff further contends that, as a result, Dr. Friedman's opinion as to plaintiff's physical limitations is insufficient to controvert the opinion of Dr. Stacey. However, as noted above, Dr. Stacey expressed no opinion as to plaintiff's physical limitations other than making the conclusory assertion that plaintiff had been unable to perform his customary work. As such, the ALJ did not err in weighing Dr. Friedman's opinion.

/////

---

[2] Plaintiff's reliance on Dr. Stacey's March 21, 2011 form is also misplaced as that same report stated that Dr. Stacey anticipated releasing plaintiff to return to his regular customary work. AT 570.

6

1           2. Residual Functional Capacity ("RFC")

2           Plaintiff contends that the ALJ's RFC assessment of plaintiff is not supported by

3 substantial evidence. Plaintiff further contends that the ALJ did not properly account for

4 plaintiff's work limitations specific to his hepatitis B and erred in finding that plaintiff could

5 perform light work. In determining a claimant's RFC, an ALJ must assess all the evidence to

6 determine what capacity the claimant has for work despite her impairments. See 20 C.F.R. §§

7 404.1545(a), 416.945(a). The court will affirm the ALJ's determination of plaintiff's RFC if the

8 ALJ applied the proper legal standard and her decision is supported by substantial evidence. See

9 Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). An examining physician's opinion

10 alone constitutes substantial evidence if it rests on that physician's own independent examination.

11 See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

12           The ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl; he should never work at unprotected heights; he should never work with moving machinery; he should not work around fire and chemicals; he requires a sit/stand option which is defined as sitting for fifteen to thirty minutes at a time and standing for thirty minutes at a time.

17 AT 21. In making this RFC determination, the ALJ took into account those limitations supported

18 by the record, including the medical opinions of Drs. Brimmer, Barry and Friedman. AT 24-25.

19 As discussed above, Dr. Brimmer examined plaintiff and opined that plaintiff could stand and

20 walk up to six hours, sit without limitation and did not need an assistive device. AT 412. She

21 further opined that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds while

22 he could occasionally climb, balance, stoop, kneel, crouch and crawl. AT 412. Dr. Barry, a

23 treating physician, opined that plaintiff could perform limited or restricted work. AT 497. Dr.

24 Friedman opined that plaintiff could occasionally lift and carry 20 pounds and frequently lift and

25 carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour

26 workday, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

27 AT 415-16. The ALJ's RFC assessment is consistent with the opinions of Drs. Brimmer, Barry

28 and Friedman. As such, the ALJ's RFC assessment is supported by substantial evidence.

As to the contention that the ALJ failed to account for plaintiff's limitations associated with hepatitis B, plaintiff does not identify any such limitations or cite to any medical evidence suggesting plaintiff had physical limitations associated with hepatitis B. The treatment records of Dr. Timothy Davern report that plaintiff has been exposed to and is an inactive carrier of hepatitis B. AT 548, 561, 563, 565, 567. However, these treatment records do not report any associated physical limitations. There was no error in the ALJ's RFC assessment of plaintiff.

B. Plaintiff's Credibility

Plaintiff further contends that the ALJ failed to provide sufficient reasons for discrediting plaintiff's subjective complaints. In particular, plaintiff contends that his daily activities are insufficient for discounting his credibility and that the ALJ did not find that plaintiff was malingering and thus must offer specific, clear and convincing reasons for rejecting plaintiff's testimony. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Soc. Sec. Admin.,

8

1  119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating

2  medical problem may be a valid consideration by the ALJ in determining whether the alleged

3  associated pain is not a significant nonexertional impairment.  See Flaten v. Sec'y of Health &

4  Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

5  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

6  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

7  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

8  reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Comm'r

9  Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

10  Plaintiff reported that he was unable to work due to his liver problems and hepatitis B.
11  AT 199.  At the hearing before the ALJ, he testified that his back pain also prevented him from
12  working.  AT 51.  The ALJ found plaintiff's statements concerning the intensity, persistence and
13  limiting effects of plaintiff's symptoms not credible for several reasons.  AT 22.  The ALJ
14  considered that plaintiff's daily activities—he could take care of his own personal care and
15  hygiene, maintained a part-time job, managed his medical care and treatment, prepared his meals,
16  did his own laundry, performed basic cleaning, could drive, ride a bicycle, use public
17  transportation, shop, regularly attend recovery meetings, recycle and read—are inconsistent with
18  his allegations of disabling impairments.  AT 236-38 (third party report), 248 (plaintiff worked as
19  a cook at a restaurant until April 2011); 262-67 (Alcoholics Anonymous attendance verification
20  forms); 409 (Dr. Brimmer reporting on plaintiff's daily activities).  The ALJ also noted that since
21  plaintiff's initial hospital treatment for liver failure, follow up care and abstinence from alcohol
22  have improved plaintiff's symptoms and stabilized plaintiff's condition.  AT 22, 444 (prognosis
23  of plaintiff was good so long as plaintiff stays away from alcohol); 480 (plaintiff seems to have
24  stabilized and abstains from alcohol).  The ALJ further explained that plaintiff testified that he
25  had not taken any medication for his liver problems, his hepatitis B did not require medication
26  and he did not exhibit active symptoms.  AT 22, 47-48 (plaintiff does not take any medication),
27  603-04 (plaintiff inactive carrier of hepatitis B).  The factors considered by the ALJ in
28  discrediting plaintiff are valid and supported by the record.

1    C. Third-Party Report

2    Plaintiff asserts that the ALJ failed to properly evaluate Caridad Aranzazu's third-party
3    function report. AT 21. "[L]ay witness testimony as to a claimant's symptoms or how an
4    impairment affects ability to work is competent evidence, and therefore cannot be disregarded
5    without comment." Nyguen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v.
6    Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe
7    a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ
8    wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to
9    each witness." Dodrill, 12 F.3d at 919; see also Stout v. Comm'r Soc. Sec. Admin., 454 F.3d
10   1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony
11   favorable to plaintiff, court cannot consider error to be harmless unless it can confidently
12   conclude no reasonable ALJ, when fully crediting testimony, could have reached different
13   disability determination). "If the ALJ gives germane reasons for rejecting testimony by one
14   witness, the ALJ need only point to those reasons when rejecting similar testimony by a different
15   witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Valentine v. Comm'r
16   Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)).

17   Ms. Aranzazu completed a Third Party Function Report form dated April 17, 2012. AT
18   235. She reported that she has known plaintiff for the past five years and observed that plaintiff
19   spends the majority of his time in the house and has difficulty sleeping. AT 235-36. Ms.
20   Aranzazu also indicated that plaintiff did not have any problems with personal care, managing his
21   medications and medical treatment, preparing his own meals, doing his laundry, driving, riding a
22   bicycle, using public transit, going out alone, shopping, and attending recovery meetings and
23   church. AT 237-38. Ms. Aranzazu reported that plaintiff is limited in his ability to lift, stand,
24   reach, walk, recall information, complete tasks, concentrate, and understanding. AT 239.

25   The ALJ concluded that Ms. Aranzazu's statements regarding plaintiff's ability to attend
26   to his personal care, maintain a household, manage his medical care, and in his ability to get
27   outside were consistent with other evidence in the record. AT 22; 248 (part-time job); 262-67
28   (attending Alcoholics Anonymous meetings); 409 (daily activities include: cooking, cleaning and

attending to his personal care). However, the ALJ found that Ms. Aranzazu's statements regarding plaintiff's ability to lift, stand, reach, and walk and her statements regarding his cognitive abilities were not credible because evidence showed plaintiff's ability to perform part-time skilled work, read, watch television, and manage his finances during this time. AT 23; 47 (plaintiff testified that he visits the doctor once a month); 49 (plaintiff's testimony asserting that he had no mental health problems). The ALJ gave germane reasons supported by the evidence for giving partial credit to Ms. Aranzazu's report.

        D. Hypothetical Question to Vocational Expert

Plaintiff asserts the ALJ posed an incomplete hypothetical question to the vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes, 881 F.2d at 756. However, the ALJ need only include the limitations that she finds to exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLore v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff contends that the ALJ failed to include all of his limitations in the hypothetical posed to the vocational expert. In posing the hypothetical, the ALJ considered all of plaintiff's limitations that were supported by substantial evidence in the record. AT 74-75. The ALJ's hypothetical question was consistent with the ALJ's finding that plaintiff could perform light work. AT 26, 74-75. The ALJ was not required to include any additional limitations as plaintiff suggests because the ALJ only included those limitations which the ALJ found to exist and were supported by substantial evidence. As such, the hypothetical reflected all of plaintiff's limitations. The ALJ did not err in posing the hypothetical to the vocational expert.

/////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: October 14, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10/4 nicholas.ss